UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

IATONDA TAYLOR,

                     Plaintiff,                     Case No. 1:15-cv-927

v.                                            Honorable Paul L. Maloney

ARAMARK CORRECTIONAL
SERVICES, INC. et al.,

                     Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Iatonda Taylor presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues Aramark Correctional Services, Inc. (Aramark), Aramark Food Service Supervisors Brian Shefer[1] and Cameron Zwart, and IBC Warden Kenneth McKee.

Plaintiff complains that, in order to reduce its costs, Aramark failed on a semi-regular basis to ensure that sufficient portions of the planned menu were available for all prisoners or made less than satisfactory substitutions for published menu items. For example, Aramark has substituted leftover peach cobbler for the announced dessert of bread pudding and has substituted reconstituted scrambled eggs for grilled cheese sandwiches. On May 2, 2015, Aramark ran out of waffles before all prisoners had been served their breakfasts. Defendant Schefer substituted two slices of bread with peanut butter and jelly as a substitute. Because waffles were a popular breakfast item, some prisoners waiting in line became agitated and threatened not to move unless more waffles were brought in from a local store. Plaintiff attempted to remove himself from the situation, but unknown prisoners told him, "[I]f you leave, then you're a sell-out." (Compl., ECF No. 1, PageID.7.) Prison officers became concerned and threatened prisoners with handcuffing and segregation. When the prisoners in the meal line failed to disperse, additional officers arrived, and some prisoners were handcuffed and removed. The officers recognized that Plaintiff had not been part of the problem and that he had been trapped in a corner. Plaintiff was not disciplined.

Since the May 2, 2015 incident, menu shortages occurred on May 20 and 26 and June 1, 9 and 10, 2015. Plaintiff alleges that, since the incident, he has been in constant fear of a riot, due

---

[1] Plaintiff spells the name "Schefer," "Scheafer" and "Schaefer" at various points in the complaint. The Court has used the spelling as it first appears in the complaint.

to the failures of Aramark to ensure that prisoners received the announced menu without substitutions.

Plaintiff filed a grievance about the May 2, 2015 incident, which was denied at Step I by Defendant Zwart. Zwart denied the grievance, because two bread slices with peanut butter and jelly was an approved substitution for waffles. During the interview on Plaintiff's grievance, Zwart allegedly stated, "Out concern is not to feed every prisoner because that [a]ffects our bottom line." (*Id.* at 5.) Defendant McKee denied the grievance at Step II.

In Count 1 of his complaint, Plaintiff contends that Aramark's failures to ensure that every prisoner receives the posted menu item, as opposed to a substitute item, places Plaintiff and other prisoners in substantial danger of serious physical injury, in violation of the Eighth Amendment. In Count 2, Plaintiff alleges that the actions of Defendants Shefer and Zwart constitutes fraud, in violation of the Eighth Amendment, incorporated through the Due Process Clause of the Fourteenth Amendment. In Count 3, Plaintiff contends that Aramark and the other Defendants violated the contract between the MDOC and Aramark, to which Plaintiff is a beneficiary. In Count 4, Plaintiff contends that Aramark's compensation to employees for cutting costs amounts to fraud under the Uniform Commercial Code, MICH. COMP. LAWS §§ 400.1201 et seq., which in turn allegedly violates the Eighth Amendment. In Count 5, Plaintiff asserts that Defendants deliberately created food shortages leading up to the May 2, 2015 incident, depriving Plaintiff and other prisoners of the basic necessities of life, in violation of the Eighth and Fourteenth Amendments.

For relief, Plaintiff seeks compensatory and punitive damages.

## Discussion

I.        Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Supervisory Liability

Plaintiff's only allegations against Defendant McKee are that McKee failed to adequately supervise his subordinates and failed to make an adequate response to his grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant McKee engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant McKee.

## B.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

1.      Failure to protect

To the extent that Plaintiff claims that Defendants' food-substitution decisions placed Plaintiff at risk of a riot, he essentially alleges that Defendants' failed to protect him from other prisoners.  Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer*, 511 U.S. at 833.  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's risk of injury.  *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).  While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack.  *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Plaintiff fails to demonstrate that his fear of injury is reasonable.  Plaintiff alleges only one occasion on which the food substitutions caused prisoners to become obstreperous.  On that occasion, prison guards were available and were fully able to calm the situation by handcuffing a few agitators before anything more than angry comments had been made.  While the situation may have been tense, Plaintiff fails to allege facts supporting his claim that he reasonably remains at substantial risk of serious injury from last-minute food substitutions.

## 2. Deprivation of essential food

Plaintiff claims that Defendants' substitutions of less desirable food items deprives him of his right to adequate food. "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). However, because the Constitution "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349, the fact that the food provided may be less appealing than what was advertised or somewhat unsatisfying does not amount to a constitutional deprivation. *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). In fact, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state

a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Plaintiff does not allege that he missed any meals, that his health suffered, or that the meals he did receive were inadequate to sustain his health. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

### 3. Fraud, breach of contract, UCC violation

Plaintiff alleges that Defendants committed fraud by making unauthorized substitutions of food, in violation of MDOC policy and Defendant Aramark's contractual agreement with the MDOC. He also contends that Defendants' conduct constituted a breach of contract and a violation of the Uniform Commercial Code, MICH. COMP. LAWS § 400.1201 et seq. He asserts that these violations deprived him of his rights under the Eighth Amendment.

As discussed, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Fraud and breach of contract do not constitute such intolerable conditions. Moreover, claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law and policy therefore fail to state a

claim under § 1983. As a result, the Eighth Amendment provides no basis for a prisoner to recover for misrepresentations and breaches of contract.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims will be dismissed without prejudice

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: <u>December 16, 2015</u>    <u>/s/ Paul L. Maloney</u>
Paul L. Maloney
United States District Judge